Ross *v.* Irving; Pryor *v.* Irving.

WILLIAM ROSS, Appellant, *v.* JAMES T. IRVING, Appellee; and JAMES PRYOR, Appellant, *v.* JAMES T. IRVING, Appellee.

APPEAL FROM PIKE.

The statute of this State, commonly called the " occupying claimants' law," which exempts the adverse possessor of land held under a plain, clear, and connected title in law or equity deducible of record, without any actual notice of a paramount title in like manner deducible of record, from any liability for the rents and profits of the land, and gives him compensation for lasting and valuable improvements made on the land prior to the receiving of ·such actual notice, is constitutional.

The mode of assessing the value of such improvements by seven commissioners, provided by that statute, does not infringe upon that clause of the constitution which guarantees the right of trial by jury.

The " actual notice" of a paramount title within the meaning of this statute, is the commencement of a suit for the recovery of the land, or by giving to the adverse possessor, a copy of the entry or patent from which the proprietor derives title.

The guarantee in the constitution that the "right of trial by jury should remain inviolate," is to be construed as preserving the right of that mode of trial as it was understood to exist at the time of the adoption of the constitution.

Trial by jury is only required on issues of fact, in civil and criminal cases in courts of justice, and cannot be extended so as to embrace the case of a mere assessment of damages or the valuation of property made out of court, though done under an order of court directing the assessment or valuation.

THESE two cases were argued conjointly. Irving sued one Brownell and Pryor in ejectment. Ross was substituted as defendant for Brownell. The verdict and judgment in the circuit court, was for Irving. Seven commissioners were appointed to assess the value of the improvements which had been made upon the land recovered in ejectment. The parties appealed, and examined witnesses before the commissioners. The commissioners made an assessment and reported it to the circuit court; thereupon, the plaintiff in that court moved to quash the report, on the ground that the law under which it was made was unconstitutional. There were some minor objections which were overruled on the circuit. The first objection was sustained, on the ground that the mode provided for ascertaining the value of the improvements was unconstitutional. Ross and Pryor, appealed. The cause was heard before MINSHALL, Judge, at March term, 1851, of the Pike Circuit Court.

A. WILLIAMS, A. LINCOLN, and W. THOMAS, for appellants.

J. BRADSHAW and R. S. BLACKWELL, for appellee.

TRUMBULL, J.    The questions presented for decision in these cases are the same, and involve the constitutionality of what is commonly known as the " occupying claimants' law," and of the mode of proceeding under it.

This law was originally adopted by the governor and judges of the Illinois Territory in 1811, from the Kentucky code, — was reënacted by the first legislature assembled under the State government, and has been continued from that day to this in the various revisions of the statute which have in the mean time taken place.    Territorial Laws, Pope's Revision, 485; Acts of 1819, 40; Acts of 1829, 98; Revised Code of 1833, 416; R. S. of 1845, Title, Ejectment, ch. 36, sect. 47 to 57.

Section one of this law, or forty-seven, as it is incorporated into the Revised Statutes, exempts every person who is evicted from any land for which he can show a plain and connected title in law or equity, deduced from the record of some public office, without actual notice of an adverse title in like manner derived from record, from all and every species of action, on account of any rents or profits, or damages which shall have been done or accrued at any time prior to the receipt of actual notice of the adverse claim by which the eviction may be effected, provided such person obtained peaceable possession of the land.

Section two directs that the court giving judgment of eviction, either in law or equity, shall, at the time, nominate seven fit persons, any five of whom shall have power, and it shall be their duty, to go on the premises, and after viewing the same, on oath or affirmation, to assess the value of such lasting and valuable improvements which shall have been made thereon prior to the receipt of such notice as aforesaid; and, also, to assess all damages the land may have sustained by the commission of any kind of waste, or by deduction of soil by cultivation or otherwise, during the occupancy of the person evicted; and then, after taking the amount of one from the other as the nature of the case may require, the persons making the assessment are required to lodge the same, signed and sealed by them, with the clerk of the court wherein they were appointed, whose duty it is made, at the next term thereafter, to enter judgment in favor of the party who shall ultimately be entitled to the balance according to the various provisions of the act.

Section three makes it the duty of the persons making the assessment, to distinguish between such improvements as were made on the land prior to notice, and those which were made after notice; also to take into consideration and ascer-

Ross *v.* Irving; Pryor *v.* Irving.

tain the value of all necessary and lasting improvements made on the land after receipt of notice, and the amount of the rent and profits arising from the whole of the improvements on the land from the time that notice of the adverse claim was received by the occupying claimant, and then, after taking the amount of one from the other, to add or subtract the balance to or from the amount of the value of the improvements which shall have been made before the receipt of notice, as the nature of the case shall require.

Section four makes it the duty of the commissioners to estimate the value of, the lands in dispute, exclusive of any improvements that shall have been made thereon, and if the value of the improvements exceeds the estimated value of the land, in that case, the proprietor of the better title is authorized to convey his better title to the occupying claimant, and thereupon judgment is to be entered in his favor against the occupying claimant, for such estimated value.

Section five declares that the persons nominated by the court shall be called commissioners, and shall respectively take an oath or affirmation, to do equal right to the parties in controversy; and shall also have power and authority to call witnesses and administer the necessary oaths, and to examine them for the ascertainment of any fact material in the inquiry and assessment directed to be made.

Section six requires the commissioners to state separately, the result of each estimate of value; provides for their compensation, and that the law shall not be extended to impair the obligation of contracts, or to authorize the occupying claimant to be twice paid for his land, and gives to a person other than the proprietor of the better title who has paid the occupying claimant for his improvements, the same redress as is allowed to the occupying claimant.

Section seven authorizes the appointment of commissioners to assess the value of improvements, &c. where a person is evicted in case of arbitration, or by consent of the parties.

Section eight declares what shall constitute notice of an adverse claim or title to the land within the meaning of the act, and provides that the proprietor of the better title shall in no case be compelled to pay for improvements made after notice, more than what is equal to the rents and profits.

Section nine declares that notice to the occupying claimant shall bind those claiming under him, to the extent of such claim.

Section ten declares that the act shall not be construed to prevent any court from issuing a precept to stay waste, and

15*

ruling the party to give bond and security in such manner as such court may think right.

The substance of the whole law and all its provisions, in any way material to the present investigation, are embraced in the foregoing abstract.

The provisions of the constitution with which the law is supposed to be in conflict, are the following: —

That no freeman shall be disseized of his freehold, or in any manner deprived of his property, but by the judgment of his peers, or the law of the land; that no *ex post facto* law, nor any law impairing the validity of contracts shall ever be made; that no man's property shall be taken or applied to public use without the consent of his representatives in the general assembly, nor without just compensation being made to him; that every person ought to obtain right and justice freely, and without being obliged to purchase it, completely, and without denial, promptly, and without delay, conformably to the laws; and that the right of trial by jury shall remain inviolate.

We will first inquire whether there is any thing repugnant to any of the provisions of the constitution which have been quoted, in the fact of requiring the successful claimant of land to pay for lasting and valuable improvements put upon it by one in possession under a clear and connected title deducible of record, without notice of the adverse title; and, secondly, whether, if there be not, the mode of estimating the damages and the value of the improvements without the intervention of a jury, is constitutional.

It will be observed, that the statute is of an equitable character, that it does not provide for compensating the occupant in any and all cases for the improvements which he may have made upon the land of another, but only in cases where he entered peaceably on the land, having a clear, connected title of his own, and made the improvements before receiving notice of the title of his adversary. There is something so manifestly right and just in such a statute, that it would be strange indeed, if the people, in their organic law, should have inhibited the legislature from passing it. The law is not intended to, nor does it disseize the proprietor of his land, nor deprive him of his property. In case the value of the improvements exceeds the value of the land, it is optional with him to sell his land at the estimated value, or pay for the improvements and retain both. By this arrangement, the proprietor is not deprived of any portion of his property; for the improvements put upon the land, under the circumstances specified in the statute, do not constitute part of the land, nor belong to the

successful claimant. It is an arbitrary rule of the common law, by which the word "land," is made to have an indefinite extent upwards as well as downwards, and to include not only the face of the earth, but all fixtures upon it ; and it would be competent for the legislature at any time to provide, that, for the future, and so far as it did not interfere with improvements or contracts already made, buildings and other fixtures upon land should be deemed personal estate. It is not pretended, that the law under consideration was not enacted many years before the improvements in these cases were made; it cannot, therefore, be objected to as retrospective, or in any manner impairing the obligation of a contract; for the improvements having been made with a knowledge of, and under the law, the act itself may be regarded as part of the contract under which they were made. So far, then, from the successful claimant being deprived of any of his property by having to pay for the improvements, he would thereby be depriving the occupying claimant of the fruits of his labor and industry, were he permitted to take them without making compensation. Under such circumstances, the occupying claimant who had made the improvements, could, with some reason, invoke in his behalf, the constitutional provision which declares that no freeman shall be deprived of his property, but by the judgment of his peers or the law of the land.

It is admitted, that the legislature has not the power to take one man's property, either without or with compensation, and give it to another. The right to take the property of the citizen without his consent, is confined to cases where it is taken for public use, and then it can only be done on just compensation being made. But this provision of the constitution is not interfered with by the law under consideration. This law does not undertake to deprive the owner of his land without his consent, but requires that, after *being* laid by till improvements have been made upon it under a title apparently good, he shall not recover the land together with the improvements which have made it valuable, and which never were his, without paying for such improvements their reasonable value.

It is nothing more than the assertion of a principle of almost daily application in courts of chancery, that he who asks equity must do equity. The guaranties of the constitution are as sacred and as binding in courts of equity as of law; and who ever supposed, when a party went into chancery having clear rights, which the court refused to recognize or enforce, except upon such terms as would also protect the rights of the opposite party, that he was thereby deprived of his property with-

out his consent? or obliged to purchase right and justice? It is the party's own fault if he does not obtain his land freely and promptly. It is in his power to institute suit, or give notice to the person entering upon the land before any improvements have been made, and then he will have none to pay for; but if he delays the assertion of his right to the land, or even to give notice of his title, till the industry and means of another supposing it to be his own, has placed upon it lasting and valuable improvements, he has no right then to complain that he cannot have the benefit of the improvements without paying for them. The same principle, involved in the occupying claimants' law, applies with equal force to that portion of the mechanics' lien law, relating to the rights of prior and subsequent incumbrances, and yet, the constitutionality of the latter act has never, to our knowledge, been questioned.

Laws similar in principle to the one under consideration exist in many, if not most, of the States of the Union, and the weight of authority is decidedly in favor of their constitutionality. 2 Kent's Com. 335; Jones *v.* Carter, 12 Mass. 314; Armstrong *v.* Jackson, 1 Blackf. 374; Hunt *v.* McMahan, 5 Ohio, 79; Bodley *v.* Craig, 1 Bibb, 1; Fowles *v.* Halbert, 4 Bibb, 52; Estill *v.* Willhite, Hardin, 528; Dunn's Heirs *v.* Games, 2 McLean, 344; Lamore *v.* Winter, 13 Ala. 31; Davis *v.* Powell, 13 Ohio, 308; Fisher *v.* Cockerill, 5 Monroe, 132.

In the case last cited, the court of appeals of Kentucky remark in reference to their occupant law of 1812, as follows: "It has been so often held by this court that the act of 1812 is constitutional, and so frequently have its provisions been carried into effect, without a question as to its validity, that it is unnecessary to cite the cases, or repeat their reasoning." The same court in the case of Gaines *v.* Buford, 1 Dana, 494, in speaking of their occupant laws, use this language: "The acts to secure compensation to the evicted owner for his improvements, are nothing more than a remedy to enforce the performance of a duty enjoined by every principle of natural justice. The *bonâ fide* occupant who converts the wilderness into a farm, renders the land more valuable by the addition of his improvements. The question in such a case is, Shall the successful claimant profit by the labor and expenditures of the occupant by getting them for nothing, or shall he make compensation? Justice answers, that no one without paying a consideration, or contracting to do so, shall be enriched by the loss of another. Hence, the successful claimant is bound in conscience to make compensation for improvements which cost him nothing, but which may have cost the occupant much toil

and money. Our occupant laws reduce this moral duty to a legal obligation. Independent of our statute, the chancellor, acting upon the basis of natural equity, would secure to the *bonâ fide* occupant the value of his ameliorations. The statutory remedy affords relief for the same thing according to a rule prescribed by legislative, instead of judicial power. The occupant pays in improvement, a consideration for the compensation secured. All this may be done, I think, without rendering invalid and insecure the right and interest of the successful claimant in and to the land."

Justice Story, in the case of Bright v. Boyd, 1 Story's Rep. 494, uses this language: "The question as to the right of the purchaser, *bonâ fide*, and for a valuable consideration, to compensation for permanent improvements made upon the estate, which have greatly enhanced its value, under a title which turns out defective, he having no notice of the defect, is one upon which, looking to the authorities, I should be inclined to pause. Upon the general principles of courts of equity, acting *ex equo et bono*, I own, that there does not seem to me any just ground to doubt that compensation, under such circumstances, ought to be allowed to the full amount of the enhanced value, upon the maxim of the common law, *Nemo debet locupletari ex alterius incommodo*." In answer to the argument, that the moment a house is built upon a lot of land, it belongs to the owner of the land by mere operation of law, and that he may certainly possess and enjoy his own, Justice Story goes on to say: "This is merely stating the technical rule of law, by which the true owner seeks to hold what, in a just sense, he never had the slightest title to, that is, the house. It is not answering the objection, but merely drily stating that the law so holds. But then, admitting this to be so, does it not furnish a strong ground why equity should interfere and grant relief?" See also 2 Story's Eq. § 799 a.; Hart's Heirs v. Baylor, Hard. 597; Jones v. Jones, 4 Gill, 88. We are aware of the decision of the Supreme Court of the United States in the case of Green v. Biddle, 5 Cond. 370, declaring the occupant law of Kentucky of 1812 repugnant to the compact of 1789, between Virginia and Kentucky; but that act, as is shown by the case itself, was obnoxious to several objections which could not be made to the act of 1793, from which ours was taken; and the same court, in the case of the Bank of Hamilton v. Dudley's Lessees, 2 Peters, 525, in considering the occupant law of Ohio, and after deciding, that the mode provided by that act for the assessment of the value of improvements, &c., by commissioners, could not be carried out in the federal courts in suits at law, for the reason that it would

conflict with the mode of proceeding prescribed for those courts by the seventh amendment to the Constitution of the United States, proceed to say : " But this inability of the courts of the United States to proceed in the mode prescribed by the statute, does not deprive the occupant of the benefit intended him. The modes of proceeding which belong to courts of chancery are adapted to the execution of the law, and *to the equity side of the court he may apply for relief.* Sitting in chancery, it can appoint commissioners to estimate improvements, as well as rents and profits, and can enjoin the execution of the judgment at law till its decree is complied with." Here is a direct recognization of the constitutionality of the principle of the law; for it would have been idle to have turned the occupant round to chancery to seek relief, under a void law.

It is stated in a note to 2 Kent's Com. 336, that it was held in Tennessee, in the case of Nelson *v.* Allen, 1 Yerger, 360, that " a statute of 1813, giving to the defendant in ejectment as against the rightful owner, the value of the improvements made upon the land, was unconstitutional and void." Not having had access to the Tennessee act, or the decision upon it, we are unadvised as to the precise character of either ; but unless it has been so held in that State, we are not apprised of a case anywhere, in which a law, similar in principle to ours, has been decided unconstitutional; and conclude that the weight of authority, as well as the reason of the thing, are in favor of the validity of such laws.

The second question for consideration is the proceeding by commissioners to estimate the value of the improvements, and the rents and profits. The question has been asked, who is to determine the right of the occupying claimant to pay for his improvements, and whether he comes within the provisions of the law ? Manifestly, the court pronouncing judgment of eviction must determine these questions, and will require to be satisfied before appointing commissioners, that the person evicted had a plain and connected title to the land in law or equity, deducible of record, without notice of the adverse title at the time he made the improvements. These are questions proper for the consideration of a court, and even if a jury were impanelled, it would not be their province to determine upon the validity and effect of the title papers of the party, and whether they constituted a connected title in law or equity. The actual notice required by the statute, is notice, either by the commencement of a suit, or by giving a copy of the entry or patent from which the proprietor derives title, to the opposite party : and it is as much the province of a court to determine whether such notice has been

given, as it is to decide whether a party in an ordinary suit has been served with process.

The main objection to the mode of proceeding prescribed by the act is, that it substitutes seven commissioners in the place of a jury to make the assessments which it authorizes.

A similar provision in the occupant law of Ohio was held to be repugnant to the seventh amendment of the Constitution of the United States, and consequently incapable of execution in the federal courts, in the case of Bank of Hamilton *v.* Dudley's Lessees, already quoted; but that provision of the United States Constitution has reference alone to proceedings in the courts of the United States, and has been repeatedly held to have no application to proceedings in the courts of the several States; consequently the only question with us is, Does the mode of assessment prescribed by the act interfere with any provision of our State constitution? In considering this point, it will be proper to look to the guaranty of the right of trial by jury, contained in both the old and the new constitution of Illinois. They are as follows : " The right of trial by jury shall remain inviolate." Constitution of 1818, art. 8, § 6. " The right of trial by jury shall remain inviolate; and shall extend to all cases at law, without regard to the amount in controversy." Constitution of 1848, art. 13, § 6. It will be observed that the right of trial by jury in the United States courts does not extend to all cases at common law, without regard to the amount in dispute, but only " to suits at common law, where the value in controversy shall exceed twenty dollars." Art. 7, Amendments Constitution U. S. The legislature of Illinois gave to the old constitution of the State the same construction as it respected the amount which must be in controversy to entitle a party to a jury, that is, they, in many instances, limited jury trials to cases where the matter in controversy exceeded twenty dollars. R. S. 321. Whether this legislative construction was consistent with the constitution of 1818, it is unnecessary now to inquire, and it is only referred to for the purpose of showing the reason which led to the insertion of the additional words in reference to jury trials in the constitution of 1848. The object and design of these additional words were to prevent such a construction as had been put upon the constitution of 1818, and to give the right of a jury trial in cases at law without regard to the amount in controversy; not to extend it to a class of cases which had not before been entitled to it. The two constitutions, therefore, so far as the present inquiry is concerned, mean the same thing. They do not provide, as does the Constitution of the United States, in reference to its

courts, that " in suits at common law the right of trial by jury shall remain inviolate," that is, shall remain as it was understood to exist at the time the respective constitutions were adopted, except that under the last the amount in controversy. should make *no difference as to the right.* Wells *v.* Caldwell, 1 Marsh. 444; Harrison *v.* Childs, 3 Litt. 195; Murphy *v.* The People, 3 Cowen, 816.

The law in question was adopted from the Kentucky statute of 1793, and, so far as we are advised, its constitutionality had never been questioned up to the time of its incorporation into the territorial laws in January, 1811; but it had then been repeatedly enforced in the State of Kentucky, and regarded as valid by all her courts.

It was not till 1823, and several years after the adoption of the first constitution by the people of Illinois, that the decision in the case of Green *v.* Biddle, throwing doubt upon the constitutionality of this law, was made. What, under such circumstances, must have been the understanding of the framers of the constitution of 1818, as to the validity of assessments made without the intervention of a jury? They had known of the existence of the act as a part of the territorial laws since 1811; that it was adopted from Kentucky, where it had been enforced for many years without a question as to its validity; and were doubtless familiar with the principle by which, in adopting a law from another State, the construction which has been placed upon it is also adopted. When, therefore, they guaranteed the right of trial by jury, as it then existed, they cannot be supposed to have intended to extend it to cases arising under a law which neither the governor and judges of the Territory who had adopted it, nor the judicial tribunals of the State from which it was taken, had ever regarded as allowing of a jury trial.

The fact, that the Ordinance of 1787 secured to the inhabitants of the Territory the right of trial by jury, and that the occupant law may have been in conflict with that instrument, and therefore void, would not, if admitted, which is by no means the case, alter the meaning to be given to the constitution which was adopted when we became a State.

The framers of our State government were practical men, and adopted a constitution with reference to the state of things as they were then understood to exist; and it is far more probable that in securing the right of trial by jury, as they then found it, they intended the right as it was then practised upon, and had been for many years understood by the territorial legislature, and not as it might be supposed to exist if a certain law, the

validity of which had never then been questioned, should be held invalid by reason of its repugnance to the ordinance. At the time the present constitution was adopted the act was of near forty years' standing, had been repeatedly reënacted by different legislatures, and had been recognized as valid by the Supreme Court in directing proceedings under it. Doe *v.* Hill, Breeze, 246. Is it to be presumed, in the face of this long acquiescence in the validity of the law by all the departments of the government, that the framers of the constitution in 1848, supposed the law unconstitutional; for unless they did, it is clear that no act of theirs has made it so.

There is another view in which a jury is not required, under the constitution, to carry into effect the provisions of the law. Trial by jury is only required on issues of fact in civil and criminal cases in courts of justice, which is not understood to embrace the case of a mere assessment of damages, or value, made out of court. Beekman *v.* Saratoga and Schenectady Railroad Co. 3 Paige, 45.

After a recovery by the successful claimant, and the determination by the court that the occupant comes within the provisions of the law so as to entitle him to pay for his improvements, there is no issue left between the parties to be tried. All that there remains to give effect to the law and which a jury could perform, is to make the various assessments of value and damages provided for by the act, and to report the same to the court. If commissioners are not competent under the constitution to make these assessments, how is it that after a judgment by default in an action upon a penal bond, or instrument for writing for the payment of money only, that a jury is dispensed with and the clerk is permitted to assess the damages? If it be said the default admits the cause of action and the defendant's liability, leaving only the extent of that liability to be ascertained, it may also in like manner be said, after a recovery in ejectment and a decision of the court that the evicted party entered upon the land under a clear and connected title of record without notice of the adverse title, that these facts are as completely and quite as satisfactorily established, as they would be by the technical admission growing out of a default; and that nothing remains to be done but to assess the amount. It is the usual practice in Illinois, and we believe in most of the States, to assess the damages for right of way without the intervention of a jury. The persons who make these assessments are in many instances required to take into consideration not only the value of the land taken for public use, but also various other matters, such as the benefits to result to the owner from the use to

which his land is to be applied.   These inquiries, which are
as complicated as any to be made under the occupant law,
have from time immemorial been made by commissioners or
householders, and that, too, without a serious question as to the
constitutionality of the mode of proceeding.

So, too, by our replevin act, R. S. 434, it is declared, that " if
the plaintiff shall not prosecute his suit, or if judgment shall in
any manner be given for the defendant without a trial, the
damages in such case may be assessed by the court on hear-
ing such testimony as may be offered on the subject."   This
court, in disposing of an objection to the constitutionality of
this statute in the case of Campbell *v.* Head, 13 Illinois, 127,
say, " This was one of the cases in which the court was author-
ized to assess the damages.   Nor is this any violation of the
right of trial by jury, which is secured by the constitution.
Here was no trial, for there was no issue between the parties
to be tried.   The right of the defendant to recover his damages
was already adjudged to him, and it was merely an inquiry as
to the extent of those damages.   It was competent for the leg-
islature to provide that these should be ascertained without the
intervention of a jury."

The decision of the Supreme Court of Pennsylvania, in the
matter of the Pennsylvania Hall, 5 Barr, 204, is particularly in
point upon this branch of the case.   The court in that case
held a law constitutional which provided for assessing damages
in case of property destroyed by mobs by an inquest of six men
on inspection out of court.   The decision is based on the
ground that the constitutional guaranty of the right of trial by
jury applies to the trial of issues in court of civil and criminal
causes, and not to an assessment of damages out of court.

The decision in the case of The Bank of Hamilton *v.* Dudley's
Lessees may be supposed to conflict with this view of the case ;
but that decision does not pretend to question the right of the
State of Ohio to dispense with a jury in such a case in her own
courts, and the supreme court of that State in the case of
Hunt *v.* McMahon, 5 Ohio, 79, sustained the constitutionality
of their occupant law in all its parts, which is a decision di-
rectly in point upon all the questions involved in this case.

The Supreme Court of Indiana, following the decision of the
Supreme Court of the United States, held the mode of valuing
improvements by commissioners to be unconstitutional, but
sustained the principle of the law so far as it gave the evicted
occupant pay for his improvements, and directed a jury to be
impanelled to assess their value.   In our view the law must
be carried into effect in the manner prescribed by the act itself,

or not at all.   It is a statutory proceeding, and if the legislature have prescribed a mode for making it effectual which is unconstitutional, the courts have no authority to reject that mode and adopt a different one.

It has been decided in Kentucky, that when equity would have had jurisdiction of a similar case, and could have proceeded without a jury, it is no infraction of the constitution for a common law court to proceed under a statute giving a summary remedy in the same sort of case without the intervention of a jury.   Creighton v. Johnson, 6 Littell, 241.

From the best consideration we have been able to bestow upon the law in question, we cannot but regard it as highly equitable in its character, and constitutional in principle; and we see nothing in the mode prescribed for its execution calculated to do injustice to any one, or that interferes with the constitutional right of trial by jury, when properly understood.

A number of exceptions were taken to the report of the commissioners in each of these cases, but the circuit court based its decision entirely, as the record shows, upon the alleged unconstitutionality of the act under which the commissioners were appointed, and for that reason alone set the report in each case aside.   Whether any of the other objections were well taken we will not now undertake to determine, as they were never passed upon by the circuit court.   Our act, as has been already stated, was adopted from Kentucky, and upon the principle that when a legislature adopts a law of another State, it also adopts, as a general rule, the construction which such law has received in the State from which it is taken, we must look to the Kentucky courts for the proper construction of our act.   It has been decided in that State, that reasonable notice to the opposite party, his agent, or attorney, is requisite before making the assessment, and that the court to which the report is made may, for sufficient cause, set it aside and direct another by the same or other commissioners.   Bodley v. Craig, 1 Bibb, 1; Johnson v. Doan, 1 Bibb, 116.

Judgments reversed, and causes remanded, with directions to the circuit court to pass upon the objections made to the reports of the commissioners, other than the one to the constitutionality of the law under which they were appointed, and to take such other steps in the causes as to law and justice appertain.

*Judgment reversed.*