*(Criminal Court of Cook County.)*

### People, ex rel. Hattie Brown,

vs.

### The Sheriff.

(Dec. 6, 1877.)

1. STATUTES—CONSTRUCTION—DEROGATORY OF COMMON LAW. Statutes in derogation of the common law must be strictly construed.

2. VAGRANCY STATUTE OF 1877—INVALIDITY OF—TRIAL BY JURY. A conviction under the vagrancy act of 1877 which authorizes a justice of the peace to try the accused and sentence him to imprisonment, without the intervention of a jury, cannot be sustained. The constitutional provision which provides that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate," prohibits any deprivation of the right to trial by jury in any case where such right was enjoyed previous to the adoption of the present Constitution.

Petition for habeas corpus. Heard before Judge McAllister. The facts are stated in the opinion.

McALLISTER, J.:—

Section 2 of the vagrancy act of 1877 (Session Laws 1877, p. 88) under which relator was tried by the police magistrate without a jury, and sentenced to six months' imprisonment, imperatively requires the justice of the peace or police magistrate before whom complaint is made against any person for vagrancy, to proceed within thirty-six hours, and try the accused; and if such justice shall find him guilty, he is authorized to sentence him to six months' imprisonment in the jail, calaboose or house of correction, or at hard labor upon the public streets or highways. It then requires such justice of the peace, in all cases, to make a full record of the case, giving date of complaint, name of defendant, if known, character of charge, names of witnesses examined, "and his findings." It requires the mittimus to state the same, and "the finding of the court, and the sentence."

This is a particular, special and summary proceeding, in derogation of the common law, and the rule is universal that the statute must be not only strictly construed, but all its requirements must be strictly observed. *Bullock v. Geomble,* 45 Ill. 218; 1 Kent's Com. (Comstock's Ed.) 598, note A. and cases cited.

It follows necessarily and logically, from that rule, as applied to the statute in question, that if the statute cannot be executed precisely according to the terms of its provisions, it cannot be at all. By the terms of its provisions, it not only authorizes the justice of the peace to try the accused, without a jury, but it is indispensable to a record made in compliance with the act that it show the finding of the justice upon the question of the guilt of the accused. It is also indispensable to a mittimus issued in the case, that it truthfully recite the finding of the justice, and the sentence. So that the idea of a jury trial is wholly excluded. The justice can issue no warrant of commitment except upon his own finding of the facts in issue upon the complaint.

The act, therefore, unquestionably denies the accused the right of jury trial in cases where the justice is authorized to inflict the punishment of six months' imprisonment in jail, calaboose, house of correction, or at hard labor in the public streets or highways. Is a conviction under it of any validity when tested by the fundamental principles of our state government?

To develop the true state of the question, a brief retrospect of the law as it existed prior to and at the time of the adoption of the constitution of 1870 will be necessary.

By section 9, article 13, of the constitution of 1848, the guarantee of the right of jury trail in criminal cases (except as it had existed at the time that instrument was adopted) was limited to prosecutions by indictment or information, which could be only in circuit courts, or other courts of record having concurrent jurisdiction. But the last clause of section 10 of the same article prohibited all jurisdiction of justices of the peace to try any person for any offense punishable with imprisonment or fine exceeding $100. The effect of this last clause was to require every criminal prosecution for an offense punishable with imprisonment to be heard in the circuit court, or some court of record having concurrent jurisdiction therewith. Said section 10 is as follows: "No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, except in cases of impeachment, or cases cognizable by justices of the peace. * * * Provided, that justices of the peace shall try no person, except as a court of inquiry, for any offense punishable with imprisonment or death, or fine above $100."

So that as is apparent from these provisions, the right to jury trial was, by the constitution of 1848, guaranteed in all cases of criminal prosecutions for any offense puinshable by imprisonment. But that is not all. From the adoption of the revised .statutes of 1845 down to a time subsequent to the adoption of the constitution of 1870, there was a statuté in force defining the offense of vagrancy, making the person accused of it liable to indictment or to be complained against before two justices of the peace, to be there tried upon such

charge; but imperatively requiring that the fact of vagrancy
should be established by a jury. "Which shall in all such
cases be sworn to inquire the truth thereof, whether the per-
son be a vagrant or not." R. S. 1845, p. 175.. 1 Gross Stat.
Ed. 1869, p. 144, sec. 138.

This retrospect shows the state of the laws, both constitu-
tional and statutory, in regard to the right of jury trial, and
as practiced upon before and at the time of the adoption of
the present constitution  First, it extended to every case of
criminal prosecution for any offense punished by imprison-
ment.    Secondly, it was especially required in trials in jus-
tices' courts, upon the charge of vagrancy.  How is it by the
present one?  Section 9, art. 2, carefully omits the limita-
tion to prosecutions upon information and indictment, con-
tained in section 9 of article 13, of that of 1848; and extends
the guarantee to every criminal prosecution, whether upon
indictment and information or complaint before a justice of
the peace.  "In all criminal prosecutions the accused shall
have the right to a speedy public trial by an impartial jury
of the county or district in which the offense is alleged to
have been committed."

Nor is that the only guarantee involved as to this right in
criminal cases.  Section 6, article 13, of the constitution of
1848 declared, "that the right of trial by jury shall remain
inviolate."  In *Ross v. Irving,* 14 Ill. 171, our supreme court,
Mr. Justice Trumbull, giving the opinion of the court, gave
an interpretation to that clause, and held that this guarantee
was to be construed as preserving the right to jury trial, as
it was understood to exist at the time of the adoption of the
constitution.  That decision was in accordance with the al-
most universal rule of interpretation recognized in this coun-
try, and involves these fundamental principles: (1) That
the constitution speaks from the time of its adoption.  (2)
That the clause in question is not regarded as creating the
right, but as being a guarantee of preservation of it as it
existed at the time.  (3) That the extent or limitation of the
guarantee is to be ascertained by an investigation into the
state of previous and existing laws, or usages, in respect to

jury trials, and as practiced at the time the constitution begins to speak.

We have seen with perfect definiteness, and without the possibility of doubt, that, at the time of the adoption of the present constitution, the right of trial by jury extended to all criminal prosecutions, for offenses punishable with imprisonment and as to the specific offense of vagrancy that existed as an indispensable prerequisite to a conviction. But, notwithstanding the decision in the case of *Ross v. Irving, supra,* the framers of the present constitution, out of superabundance of caution, and to remove the possibility of a doubt, changed the language employed in both of the former constitutions in this state as to the guarantee of this right, and expressed it thus: ''The right of trial by jury, as heretofore enjoyed, shall remain inviolate.''

To take these words in their natural sense involves no absurdity or conflict with any other provision of the instrument. That being so, it is the duty of the courts to take and enforce them in that sense, and no other. This is the settled doctrine of the supreme court of this state. ''That which the words declare is the meaning; and neither courts nor legislatures have a right to add to or take away from that meaning.''

The framers of the constitution and the people who adopted it, must be understood to have employed words in their natural sense, and to have understood what they meant. *Hills v. Chicago,* 60 Ill. 86; *Edwards v. City of Springfield,* 10 Chicago Leg. N. 52.[1]

No other construction but that of words in their natural sense, in the absence of conflict with other provisions, ought to receive the least countenance from courts. If the meaning which the words in their natural sense convey can be perverted and circumvented by the subtleties of artificial and far-fetched rules, then constitutions are a sham and a snare. Some may say that because the convicted party has the right to appeal on giving bond, the right is substantially preserved. It is not so. The right is preserved as it was theretofore enjoyed; that is, not only in the same cases, but in the same

---

[1] *City of Springfield v. Edwards,* 84 Ill. 626.—Ed.

manner.  As the law existed at the time the constitution be-
gan to speak, a jury trial was indispensable to a conviction
upon the charge of vagrancy, whether the proceeding was by
indictment in the circuit court or on complaint before justices
of the peace.  That was the right of trial by jury as hereto-
fore enjoyed, and which is guaranteed as inviolate.

In the case of *Greene v. Briggs,* Curtis, C. R. 311,[2] arising
under the constitution of Rhode Island, and where no such
clause as we are considering was contained, Mr. Justice Cur-
tis, of the supreme court of the United States, and one of the
ablest jurists that ever adorned that bench, said: "The legis-
lature may confer on justices of the peace power to punish
offenses; but it must be so done as to preserve, unimpaired,
the right of trial by jury; otherwise the whole proceeding is
void, *ab initio.*"  The constitution declares, that "in all crim-
inal prosecutions, the accused shall enjoy the right to a speedy
and public trial by an impartial jury."  But the learned judge
further held in that case that the legislature cannot make the
right of trial by jury in a criminal case dependent upon the
accused giving a bond, with security for the payment of the
penalty and costs.

That proposition is clearer and more obvious here, under
the emphatic guarantee that the right of such trial as there-
tofore enjoyed shall remain inviolate, because, if made sub-
ject by statute to the condition of giving bond with surety,
which was not a condition before, then it is not as theretofore
enjoyed.

Cases may be found where statutes giving justices of the
peace jurisdiction to try without jury persons accused of minor
offenses, created by such statutes, have been held valid.  Such
is *Murphy v. The People*, 2 Cow. 815; *People v. Goodwin*, 5
Wend. 251; *Duffey v. The People*, 6 Hill, 75; *Plato v. People*,
3 Parker Cr. 586; *McGear v. Woodruff*, 4 Vroom. (N. J.),
213; and there may be others; but in all of them the decision
is and will be found to be, put upon the ground that similar
statutes existed, and such trials were authorized and practiced

[2] Fed. Cas. 5,764.—Ed.

before the adoption of the constitution under which the question arose, as well as the particular language of such constitution. Nor does it make any difference that the vagrancy act of 1877 in question makes additions to the definitions of the offense since the new constitution was adopted. In New York, where the right of trial by jury extends "to all cases in which it has been heretofore used," it has been held that these words are generic and cover statutory additions made since the adoption of the constitution to the classes of cases in which jury trial was in use at the time of such adoption. *Fire Department v. Harrison*, 2 Hilton, 455; *Wynehamer v. The People*, 13 N. Y. 378, 426.

The same principle is applied where statutory additions are made to classes as to which the right did not extend at the time of such adoption. *Duffey v. The People*, 6 Hill, 75. I have given this matter a very careful investigation, and am fully satisfied—indeed I have not the slightest doubt—that the second section of the act in question purports to confer on justices of the peace the power to try for vagrancy without a jury. Its terms can be complied with in no other way; that the right of jury trial, as to charges of vagrancy, not only existed for at least a quarter of a century before and at the time the present constitution was adopted, but such trial was indispensable in the first instance, and to a lawful constitution; that by the guarantee that such right, as it had theretofore been enjoyed, should remain inviolate, it was preserved as it existed and was enjoyed; and that, therefore, any conviction under section 2, of this statute, whereby that right is denied, is void *ab initio.*

From these views it follows that the imprisonment of the relator is illegal, and she is entitled to be discharged.

NOTE. See the contra opinion of Judge McCulloch in *People ex rel. v. Hitchcock* and the later opinion of Judge McAllister in *People ex rel v. Superintendent*, immediately following this opinion.—Ed.