(No. 13502.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN KUCHTA, Plaintiff in Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. CRIMINAL LAW—*question of credibility of witnesses is for the jury.* In a prosecution for manslaughter against the driver of an automobile it is for the jury to decide as to the credibility of the witnesses for the State and those for the defendant and the reasonableness of their respective accounts of the occurrence.

2. SAME—*jury may be instructed that they are judges of the law.* As the statute provides that juries in all criminal cases shall be judges of the law as well as the facts, it is proper in an instruction to state that rule to the jury. (*People* v. *Mirabella,* 294 Ill. 246, explained.)

3. SAME—*when jury may be instructed as to what is prima facie an unreasonable rate of speed for automobile.* In a prosecution for manslaughter committed by careless driving of an automobile, it is not error to instruct the jury that a speed exceeding ten miles an hour in a closely built-up section of a city or fifteen miles in a

residence portion is *prima facie* evidence of a rate of speed greater than is reasonable or proper, where there is evidence fairly tending to show that the accident happened in a residence portion of a city and that the automobile was then going about sixteen miles an hour.

4. SAME—*when instruction as to duty of jury to apply the law is not erroneous.* In a criminal case, an instruction stating that it is the duty of the jury to determine the facts from the evidence and "to apply to such facts the law," is not erroneous in not adding the words, "as stated in these instructions."

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HARRY A. LEWIS, Judge, presiding.

EUGENE L. McGARRY, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

John Kuchta has sued out this writ of error to review a judgment of the criminal court of Cook county whereby he was convicted of manslaughter and insists that the evidence does not justify the conviction.

On Sunday afternoon, November 17, 1918, Agnes Sauter, with her three sisters and a sister-in-law, had all been visiting another sister at 3360 Archer avenue, in the city of Chicago, and had started home shortly after five o'clock. They walked along Archer avenue nearly to Robey street and were standing in the street a short distance east of Robey street, between the north curb of Archer avenue and the street car track, waiting at the usual place for passengers for a street car approaching from the east which they intended to take, when they were struck by an automobile driven by the plaintiff in error, coming from the west on the wrong side of the street, and were all knocked down by it and Agnes was killed. They were all looking to the

east at the approaching car, which was slowing down to stop for them, and none of the three who testified at the trial remembered hearing any warning of the approach of the automobile or having any knowledge of it until it ran over them. The motorman of the street car testified that he saw the women waiting in the street when he was 200 or 300 feet east of Robey street, and when he was within 75 or 100 feet of them he saw the automobile, which was then about 100 feet west of them, coming east on the north side of the track; that he shut off the power when he was 50 or 100 feet away from the women and stopped his car with its front end within five feet of them; that he watched the automobile, which was between the car track and the curb, going about fifteen miles an hour and kept coming toward him, and that just as the rear end of the automobile passed him he saw three bodies coming from underneath it and that the automobile stopped at the rear end of the car. The conductor testified that the automobile was right at the rear car step, and the dead girl was lying about the middle of the street car and about 15 feet behind the automobile. Other witnesses for the People testified to the occurrence, their testimony differing only in unimportant details.

The evidence introduced on behalf of the defendant tended to show that he was driving the automobile, in which were four other men, on Archer avenue. When he came to the intersection of Western avenue there was a street car in front of him, which stopped on that corner. He followed this car, driving east in the south car track with his wheels on either side of the south rail. He stopped whenever the street car stopped and started when it started, keeping a distance of 15 or 20 feet behind it. When the street car reached Robey street it did not stop. He was 15 or 20 feet behind the street car but did not attempt to pass it. Suddenly he saw a high-powered automobile with a searchlight swerve to the left from in front of the

street car and come rapidly toward him on the south side of the street car.  He turned to the left to avoid the car, which he feared might strike him.  When he turned into the west-bound track he saw a street car coming west on that track and in order to avoid it turned still more to the north, and immediately on clearing the front end of the west-bound car saw the women on the street, about eight feet away.  He was running ten or fifteen miles an hour and could stop within 12 or 14 feet, but he was unable to stop the car and had no time to give any warning except to call out.

Two ordinances of the city were introduced in evidence,—one requiring vehicles to keep as close to the right-hand curb as safety and prudence would permit except when overtaking and passing another vehicle and except when running within the car tracks, and requiring overtaken vehicles to be passed on the left side, except in the case of motor vehicles and motorcycles passing street cars or other vehicles running within the car tracks, in which case the motor vehicle or motorcycle should not turn to the left into the track reserved for street cars and vehicles moving in the opposite direction but should pass to the right; the other, prohibiting drivers of any vehicle overtaking any street car stopped for the purpose of discharging or taking on passengers approaching within 10 feet of such car so long as it was so stopped or remained standing for the purpose of discharging or taking on passengers.

If the jury accepted the version of the occurrence testified to by the witnesses for the prosecution it is apparent that the defendant was guilty not merely of a negligent omission of duty but of a criminal disregard of consequences and the rights of others by the intentional doing of a wrongful act in driving the automobile on the wrong side of the street in violation of the ordinances and failing to discover a group of persons who were in plain view for 100 feet before he struck them, while he could have

stopped the automobile in 12 or 14 feet. It was for the jury to decide as to the credibility of the witnesses and the reasonableness of their respective accounts of the occurrence. The verdict cannot be disturbed because it was not sustained by the evidence unless error prejudicial to the defendant occurred on the trial.

There was no evidence that the defendant was intoxicated, but counsel for the plaintiff in error insist that the State's attorney attempted to get incompetent evidence before the jury for the purpose of having them infer, notwithstanding the positive testimony to the contrary, that the defendant was intoxicated and his intoxication probably caused the fatal accident. All of the five occupants of the automobile got out of it at the time of the occurrence except one, who remained on the back seat. One of the witnesses testified to this fact, and in response to the question what did the man who did not leave the machine do, said that he was lying on his back, "like drunk." On objection this answer was stricken out and the witness was permitted to answer that the man was reclining and the witness did not see him awake. A policeman who arrived on the scene after the accident happened testified to seeing the automobile with one man in it, whose name he gave, and added that "he was asleep,—intoxicated; asleep in back of the car." This answer was not in response to any question and was stricken out by the court. The motorman testified that after the patrol wagon arrived he walked over to the automobile and saw a man sitting in the rear seat and that the witness did not know whether he was awake or asleep. There is no complaint of any action of the court. There is nothing in the record to indicate that any claim was made on behalf of the prosecution that the defendant was intoxicated; the circumstances indicated had no tendency to show that he was intoxicated; they were of no importance and could not have been prejudicial to the defendant.

It is insisted that the court erred in instructing the jury, as it did, that "the jury are the judges of the law as well as the evidence, and are entitled to pass on the legal points involved in the case to the exclusion of any instructions of the court, if they, upon their oaths, consider that they know what the law is. If, under all the circumstances, they are prepared to say that the court is wrong in its exposition of the law, the statute has given them that right." The statute provides that juries in all criminal cases shall be the judges of the law and the fact, and it has been held frequently that it is proper to state to the jury the rule announced in this instruction.

The plaintiff in error relies upon the case of *People* v. *Mirabella*, 294 Ill. 246, in which it was held not erroneous to give an instruction which stated in part: "The jury are instructed that from anything the court has said or done in this case you are not to understand that he has any opinion upon the facts of the case. It is the duty of the jury to find and determine the facts of this case from the evidence, and, having done so, to apply to such facts the law as stated in these instructions. The court further instructs the jury that these instructions are given and should be considered together as one entire series, and each instruction should be considered in connection with all other instructions bearing upon the same subject." The instruction also cautioned the jury against considering any argument not based on the evidence or any offered evidence denied or stricken out by the court. It was stated that the purpose of the instruction was to caution the jury to consider only those matters properly before it, and if the plaintiffs in error desired the jurors to be further instructed on their right to ignore the court's instructions they should have submitted such an instruction. It was further stated in the opinion that there was abundant evidence in the record to justify the conviction of the plaintiffs in error of the offense charged, and that the jury could

not reasonably return any other verdict than one of guilty. It is manifest that it was not intended by the decision in that case to disregard the statute, to overrule the previous decisions of the court or to announce any new or different rule in the trial of criminal cases. What was decided was only that in view of the record then before the court it was not erroneous to give the instruction in that particular case.

While the fifteenth instruction given at the request of the prosecution was criticised in *Juretich* v. *People,* 223 Ill. 484, it is said in *People* v. *Campbell,* 234 Ill. 391, that the instruction has been repeatedly sanctioned by the court and its correctness is settled.

From what has been said it also follows that instruction No. 14 was not erroneous for informing the jury that "it is the duty of the jury to find and determine the facts of the case from the evidence and having done so to apply to such facts the law," without adding, "as stated in these instructions."

It is argued that it was error to give instruction No. 3, which informed the jury that if the rate of speed of a motor vehicle on a public street in the closely built-up section of a city, town or village exceeds ten miles an hour, or if it exceeds fifteen miles an hour in the residence portion of such town, city or village, such rates of speed are *prima facie* evidence of a rate of speed greater than is reasonable or proper. The objection made to the instruction is that there is no evidence that the place of the accident was either in a closely built-up business section or in a residence portion of the city, or that the speed of the automobile exceeded fifteen miles an hour just before and at the time of the collision. There was evidence fairly tending to show that the place was in a residence portion of the city, and one of the occupants of the car testified that at the time the accident occurred the automobile was

going about fifteen, sixteen or seventeen miles an hour. It was not error to give the instruction.

The plaintiff in error contends that the court should have given his refused instruction No. 1, in regard to what constitutes criminal negligence. His instructions Nos. 5 and 6, which were given, fully stated everything which was properly contained in refused instruction No. 1.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*