(No. 20603.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN BRUNER, Plaintiff in Error.

*Opinion filed February 18, 1931.*

DUNCAN, J., dissenting.

David A. Riskind, (Arthur J. Goldberg, and Norman Asher, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, (John J. Healy, and Walter Bachrach, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

An indictment was returned in the criminal court of Cook county charging Ben Bruner with robbery while armed with a dangerous weapon. A jury found him guilty and he was sentenced to the penitentiary. He prosecutes this writ of error for a review of the record.

Upon the trial, counsel for the plaintiff in error requested the court to give the jury the following instruction: "The court instructs the jury that they are the judges of the law as well as of the facts in the case, and if they can say upon their oaths that they know the law better than the court does, they have a right to do so; but before assuming so solemn a responsibility, they should be assured that they are not acting from caprice or prejudice, that they are not controlled by their wills or their wishes, but from deep and confident conviction that the court is wrong and that they are right. Before saying this upon their oaths, it is their duty to reflect whether, from their study and experience, they are better qualified to judge of the law, than the court; if, under all the circumstances, they are prepared to say that the court is wrong in its exposition of the law, the statute has given them the right." This instruction was refused, but instead of it, upon the motion of the State's attorney, the jury were instructed that: "The jury is the sole judge of the facts in the case, the credibility of the

witnesses, and of the weight to be given to their testimony. And, in anything that the court may have said throughout the trial or anything that the court may say in these instructions, the court has not intended and he does not now intend to express any opinion upon the facts of the case, on the credibility of the witnesses, or the weight to be given to their testimony. On the other hand, the court is the sole judge of the law in the case, and it becomes the duty of the jury to follow the law as it is given to it by the court in his instructions. You have no right to disregard it, or disregard any portion thereof, but you are bound to take the whole of it as it is given to you by the court and apply it to this case."

The refused instruction was based upon section 11 of division 13 of the Criminal Code (Cahill's Stat 1929, p. 953; Smith's Stat. 1929, p. 1068), which provides that "Juries in all criminal cases shall be judges of the law and the fact." This statutory provision was originally enacted in 1827 as a part of section 176 of the act entitled "An act relative to criminal jurisprudence" (Laws of 1827, p. 163), and continuously since has been a part of the Criminal Code of this State. The defendant in error justifies the refusal of the first and the giving of the second instruction on the ground that the statute which the plaintiff in error invokes contravenes (a) section 5 of article 2 of the constitution of 1870, that the right of trial by jury as heretofore enjoyed shall remain inviolate, and (b) the third article of the constitution which distributes the powers of the State government among the legislative, executive and judicial departments and prohibits the exercise, except as expressly directed or permitted, by any person or collection of persons constituting one of these departments, of any power properly belonging to either of the other departments. The trial court's rulings with respect to these instructions form the basis of the only errors assigned and relied upon by the plaintiff in error for a reversal of the judgment.

Section 6 of article 8 of the constitution of 1818 provided "That the right of the trial by jury shall remain inviolate;" by section 6 of article 13 of the constitution of 1848, it was provided "That the right of trial by jury shall remain inviolate," and section 5 of article 2 of the constitution of 1870 provides that "The right of trial by jury as heretofore enjoyed, shall remain inviolate." The same right was guaranteed by each successive constitution. The modifications in procedure made by statute did not affect the substantial right so guaranteed and the words "heretofore enjoyed" were not intended to engraft such changes upon it. The word "heretofore" evidently relates to the past, and to determine the true meaning of the words "the right of trial by jury as heretofore enjoyed," it is necessary to have recourse to the common law of England. (*George* v. *People*, 167 Ill. 447; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609; *Liska* v. *Chicago Railways Co.* 318 id. 570). The Supreme Court of Michigan spoke to the same effect in *Hamilton* v. *People*, 29 Mich. 173: "We must construe the jury system, like all other parts of our legal fabric, in the light of history and usage. It came into this country as a part of our common law, and it has been fixed by our constitutions as a known and regular common-law institution."

Limiting our inquiry to the purposes of the present case, it may be stated that under the English common law, the court instructed the jury upon the law and the jury determined the issues of fact. This principle was succinctly expressed by Lord Coke: *"Ad quæstionem facti non respondent judices, ad quæstionem juris non respondent juratores."* (Coke on Littleton, 155b). "It was very early provided," says Forsyth in his History of Trial by Jury, (Morgan's ed. p. 216), "that the jury should not entangle themselves with questions of law, but confine themselves simply and exclusively to facts." Likewise, Professor Austin W. Scott, in 31 Harvard Law Review, page 677, observed: "It may safely be said that at the time of the American Revolution

the general principle was well established in the English law that juries must answer to questions of fact and judges to questions of law. This is the fundamental maxim acknowledged by the constitution."

The courts of this country have recognized and applied this principle of the common law and reference to a few of the leading cases may be useful. An indictment for a capital offense was returned in *United States* v. *Battiste,* 2 Sumner, 240, and the question was directly presented whether, in criminal cases, juries were the judges of the law as well as of the facts. Judge Story, in rendering judgment, said, at pages 243, 244: "My opinion is that the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case, tried upon the general issue. In each of these cases, their verdict, when general, is necessarily compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact. In each, they have the physical power to disregard the law, as laid down to them by the court. But I deny, that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions, or pleasure. On the contrary, I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the court. This is the right of every citizen; and it is his only protection. If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views, which different juries might take of it; but in case of error, there would be no remedy or redress by the injured party; for the court would not have any right to review the law as it had been settled by the jury. Indeed, it would be almost impracticable to

ascertain, what the law, as settled by the jury, actually was. On the contrary, if the court should err, in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular court may require. Every person accused as a criminal has a right to be tried according to the law of the land, the fixed law of the land; and not by the law as a jury may understand it, or choose, from wantonness, or ignorance, or accidental mistake to interpret it."

The contention was made in *United States* v. *Morris,* 1 Curtis, 23, that juries, impaneled in the courts of the United States, were the rightful and final judges of the existence, construction and effect of the laws that were material in criminal cases and could of right, and in the performance of their duty necessarily should, decide finally upon the constitutional validity of the acts of Congress which the trials brought in question. In answering this contention, Mr. Justice Curtis said, at page 52: "The sixth article, after declaring that the constitution, laws, and treaties of the United States shall be the supreme law of the land, proceeds, 'and the judges, in every State, shall be bound thereby.' But was it not intended that the constitution, laws, and treaties of the United States should be the supreme law in criminal as well as in civil cases? If a State law should make it penal for an officer of the United States to do what an act of Congress commands him to do, was not the latter to be supreme over the former? And if so, and in such cases, juries finally and rightfully determine the law, and the constitution so means when it speaks of a trial by jury, why was this command laid on the judges alone, who are thus mere advisers of the jury, and may be bound to give sound advice, but have no real power in the matter? It was evidently the intention of the constitution that all persons engaged in making, expounding, and executing the laws, not only under the authority of the

United States but of the several States, should be bound by oath or affirmation to support the constitution of the United States. But no such oath or affirmation is required of jurors, to whom it is alleged the constitution confides the power of expounding that instrument; and not only construing, but holding invalid any law which may come in question on a criminal trial." The learned justice proceeded, at page 53: "In my opinion, then, it is the duty of the court to decide every question of law which arises in a criminal trial; if the question touches any matter affecting the course of the trial, such as the competency of a witness, the admissibility of evidence, and the like, the jury receive no direction concerning it; it affects the materials out of which they are to form their verdict, but they have no more concern with it than they would have had if the question had arisen in some other trial. If the question of law enters into the issue, and forms part of it, the jury are to be told what the law is, and they are bound to consider that they are told truly; that law they are to apply to the facts, as they find them, and thus, passing both on the law and the fact, they, from both, frame their general verdict of guilty or not guilty."

In the trial of the Seven Bishops, 12 How. St. Tr. 183, and in *Rex* v. *St. Asaph,* 3 T. R. 428, the principal issue was whether the jury in a prosecution for criminal libel had the right to return a general verdict, or whether a special verdict concerning only the publication of the alleged libelous matter was required to be rendered, leaving the question whether the matter was libelous to the court for determination. This controversy led to the enactment in the year 1792, by the English Parliament, of Fox's Libel Bill (St. 32 Geo. III, c. 60), which declared that, in a prosecution for criminal libel the jury had the right to render a general verdict. In *United States* v. *Morris, supra,* it was argued that this act declared that, on trials for criminal libel, the jury should be allowed to pass on the law as well as the

facts. After quoting from the act: "The court or judge, before whom such indictment or information shall be tried, shall, according to their or his discretion, give their or his opinion and directions to the jury, on the matter in issue between the King and the defendant, in like manner as in other criminal cases," Mr. Justice Curtis continued at page 55: "This seems to me to carry the clearest implication that, in this and all other criminal cases, the jury may be directed by the judge; and that, while the object of the statute was to declare that there was other matter of fact besides publication and the innuendoes to be decided by the jury, it was not intended to interfere with the proper province of the judge, to decide all matters of law. That this is the received opinion in England, and that the general rule, declared in *Rex* v. *Dean of St. Asaph,* that juries cannot rightfully decide the law in criminal cases, is still the law in England, may be seen by reference to the opinions of Parke, B., in *Parmiter* v. *Copeland,* 6 M. & W. 165; and of Best, C. J., in *Levi* v. *Milne,* 4 Bing. R. 195. I conclude then, that when the constitution of the United States was founded, it was a settled rule of the common law that, in criminal as well as civil cases, the court decided the law, and the jury the facts; and it cannot be doubted that this must have an important effect in determining what is meant by the constitution when it adopts a trial by jury."

Subsequent to the decision of the foregoing Federal cases, the question was considered by the Supreme Court of the United States, and after an elaborate review of the authorities, both English and American, that court, in *Sparf and Hansen* v. *United States,* 156 U. S. 51, Mr. Justice Gray and Mr. Justice Shiras dissenting, decided that, following the rule and practice at common law, it was the duty of the jury in every criminal case in the courts of the United States to take the law from the court and to apply the law so received to the facts as they found them from the evidence. The court, in the course of its opinion, which

was delivered by Mr. Justice Harlan, observed, page 101, that "Any other rule than that indicated in the above observations would bring confusion and uncertainty in the administration of the criminal law. Indeed, if a jury may rightfully disregard the direction of the court in matter of, law, and determine for themselves what the law is in the particular case before them, it is difficult to perceive any legal ground upon which a verdict of conviction can be set aside by the court as being against law. If it be the function of the jury to decide the law as well as the facts—if the function of the court be only advisory as to the law— why should the court interfere for the protection of the accused against what it deems an error of the jury in matter of law?"

The great preponderance of authority in the courts of the several States likewise denies that by the common law, jurors in criminal cases are the judges of the law. Among these authorities may be cited: *Pierson* v. *State*, 12 Ala. 149; *Batre* v. *State*, 18 id. 119; *Washington* v. *State*, 63 id. 135; *Pleasant* v. *State*, 13 Ark. 360; *Sweeney* v. *State*, 35 id. 585; *People* v. *Anderson*, 44 Cal. 65; *People* v. *Ivey*, 49 id. 56; *State* v. *Icandell*, 5 Harr. (Del.) 475; *Ridenhour* v. *State*, 75 Ga. 382; *Danforth* v. *State*, 75 id. 614; *State* v. *Miller*, 53 Iowa, 154; *State* v. *Truskett*, 85 Kan. 804; *Commonwealth* v. *VanTuyl*, 1 Metc. (Ky.) 1; *State* v. *Ford*, 37 La. Ann. 443; *State* v. *Hannibal*, 37 id. 619; *State* v. *Wright*, 53 Me. 328; *Commonwealth* v. *Porter*, 10 Metc. (Mass.) 263; *Commonwealth* v. *Anthes*, 5 Gray, (Mass.) 185; *Commonwealth* v. *Rock*, 10 id. 4; *Hamilton* v. *People*, 29 Mich. 173; *Williams* v. *State*, 32 Miss. 389, 66 Am. Dec. 615; *Hardy* v. *State*, 7 Mo. 607; *State* v. *Hosmer*, 85 id. 553; *Parrish* v. *State*, 14 Neb. 60; *Pierce* v. *State*, 13 N. H. 536; *People* v. *Pine*, 2 Barb. (N. Y.) 566; *Carpenter* v. *People*, 8 id. 603; *Duffy* v. *People*, 26 N. Y. 588; *State* v. *Drawdy*, 48 S. C. L. 87; *State* v. *Sypkrett*, 27 S. C. 29, 13 Am. St. Rep. 616, and note; *Nels* v.

*State,* 2 Tex. 280; *Dejarnette* v. *Commonwealth,* 75 Va. 867; *Gottlieb* v. *Commonwealth,* 126 Va. 807; *State* v. *Burpee,* 65 Vt. 1; and *State* v. *Dickey,* 48 W. Va. 325.

Perhaps the most complete examination of the question, both upon principle and authority, to be found in the decisions of the State courts was made in *Commonwealth* v. *Anthes, supra.* In that case, Chief Justice Shaw, speaking for the majority of the court said that, the fundamental principle of the common law, both in civil and criminal cases, was, that the judges should adjudicate finally upon the whole question of law, and the jury upon the whole question of fact. An extensive examination of the authorities led the court in *State* v. *Wright,* 53 Me. 328, to say that the doctrine that the jury are judges of the law as well as the facts in criminal cases is contrary to reason, to the fundamental principles of the common law and to the vast preponderance of judicial authority. Another exhaustive review of the authorities, English and American, was made by the Supreme Court of Vermont, and that court, overruling *State* v. *Croteau,* 23 Vt. 14, and prior decisions in accord with it, said, in *State* v. *Burpee,* 65 Vt. 1, at pages 34 and 35: "We are thus led to the conclusion that the doctrine that jurors are the judges of the law in criminal cases is untenable; that it is contrary to the fundamental maxims of the common law from which it is claimed to take its origin; contrary to the uniform practice and decisions of the courts of Great Britain, where our jury system had its beginning and where it matured; contrary to the great weight of authority in this country; contrary to the spirit and meaning of the constitution of the United States; repugnant to the constitution of this State; repugnant to our statute relative to the reservation of questions of law in criminal cases, and passing the same to the Supreme Court for final decision; and, as was said by Walton, J., in *State* v. *Wright, supra,* 'Contrary to reason and fitness, in withdrawing the interpretation of the laws from those who

make it the business and the study of their lives to understand them, and committing it to a class of men who, being drawn from non-professional life for occasional and temporary service only, possess no such qualification, and whose decision would be certain to be conflicting in all doubtful cases, and would therefore lead to endless confusion and perpetual uncertainty.' "

The foregoing authorities amply show that, by the common law, the jurors in a criminal trial had no right to decide any question of law, and that if they rendered a general verdict, their duty and their oath required them to apply to the facts, as they found them, the law as stated by the court. Section 11 of division 13 of the Criminal Code, which makes juries in all criminal cases judges of the law as well as the facts, therefore abrogates an essential attribute of the trial of a criminal case by a jury as known to the common law and results in the deprivation of a right which has been uniformly guaranteed by our successive constitutions.

The statute under review, the defendant in error contends, also violates the third article of the constitution which provides: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." By the words "except as hereinafter expressly directed or permitted," the constitution recognizes certain exceptions to the separation of powers required by the third article. Among these exceptions are section 9 of article 4 which authorizes either house of the General Assembly to imprison persons, not members, who shall be guilty of disorderly or contemptuous behavior in its presence; section 24 of the same article which provides that all impeachments found or returned by the house of representatives shall be tried by the senate,

and section 30 of article 6 which gives the General Assembly, upon due notice and opportunity for defense, the power to remove judges from office "for cause entered on the journals." These excepted functions may be said to be judicial in nature but they are conferred upon the legislative department of the State government by the constitution itself and for that reason are exempt from the prohibitions of article three.

Section 1 of article 6 of the constitution vests the judicial powers in a supreme court and certain subordinate courts. The grant of judicial power to the department created for the purpose of exercising it is an exclusive grant and exhausts the whole and entire power. (*People* v. *Smith*, 327 Ill. 11; *'People* v. *Fisher*, 340 id. 250.) The phrase judicial power has been variously defined. Judge Cooley, in his work on Constitutional Limitations, 8th ed. p. 184, defined it as the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws. This definition was quoted with approval in *Land Owners* v. *People*, 113 Ill. 296, *People* v. *Chase*, 165 id. 527, and *People* v. *Simon*, 176 id. 165. To the same effect are: *Mitchell* v. *Lowden*, 288 Ill. 327, and *Arms* v. *Ayer*; 192 id. 601. Other definitions of judicial power are, in 2 Bouvier's Law Dictionary, 8th ed., p. 1740, the authority exercised by that department of government which is charged with the declaration of what the law is and its construction so far as it is written law, and in *People* v. *Salsbury*, 134 Mich. 537, 546, the power to interpret the constitution and the laws and make decrees determining controversies. Judicial power is exercised for the purpose of giving effect, not to the will of the judge, but to the law. (*Osborn* v. *United States Bank*, 9 Wheat. (U. S.) 738). If the power is judicial in its nature, it necessarily follows that the legislature is expressly prohibited from exercising it. *In re Day*, 181 Ill. 73.

The interpretation of statutes, the determination of their validity, and the application of the rules and principles of the common law, among others, are inherently judicial functions. The constitution vested these functions in the courts created and authorized by it. (*Commonwealth* v. *Anthes,* 71 Mass. 185; *State* v. *Wright,* 53 Me. 328). No provision for a trial by jury is made by the sixth article of the constitution. The right to such a trial is guaranteed by the bill of rights and when it is exercised, the jury's province is the determination of issues of fact and not of law. Francis Wharton, speaking upon this question in 1 Crim. Law. Mag. 56, well said: "Subject to the qualification that all acquittals are final, the law in criminal cases is to be determined by the court. In this way we have our liberties and rights determined, not by an irresponsible, but by a responsible tribunal; not by a tribunal ignorant of the law, but by a tribunal trained to and disciplined by the law; not by an irreversible tribunal, but by a reversible tribunal; not by a tribunal which makes its own law, but by a tribunal that obeys the law as made. In this way we maintain two fundamental maxims. The first is, that while to facts answer juries, to the law answers the court. The second, which is still more important is *'Nullum crimen, nulla pœna, sine lege.'* Unless there be a violation of law pre-announced, and this by a constant and responsible tribunal, there is no crime, and can be no punishment." If jurors are the judges of the law in a criminal case, then consistently their verdict in such a case cannot be contrary to the law and the trial judge has neither the right nor the power to set aside a verdict of guilty for that reason. If the legislative department may take from the courts and vest in juries the power to declare the law in a criminal case, then likewise the legislature may deprive the courts of the power to pass upon the sufficiency of an indictment, to determine the admissibility of evidence and to review a judgment of con-

viction. It will not be contended that such changes are within the competency of the legislative power.

The framers of the constitution sought to promote certainty and uniformity in the interpretation and declaration of the law. To that end they committed the exercise of these judicial functions to the judicial department. Correct and uniform interpretation of the law are of the first importance to secure stable and orderly government. Mr. Justice Harlan, in delivering the opinion of the court in *Sparf and Hansen* v. *United States, supra,* pages 101-103, well said: "Public and private safety alike would be in peril, if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court and become a law unto themselves. Under such a system, the principal function of the judge would be to preside and keep order while jurymen, untrained in the law, would determine questions affecting life, liberty, or property according to such legal principles as in their judgment were applicable to the particular case being tried. If because, generally speaking, it is the function of the jury to determine the guilt or innocence of the accused according to the evidence, of the truth or weight of which they are to judge, the court should be held bound to instruct them upon a point in respect to which there was no evidence whatever, or to forbear stating what the law is upon a given state of facts, the result would be that the enforcement of the law against criminals and the protection of citizens against unjust and groundless prosecutions, would depend entirely upon juries uncontrolled by any settled, fixed, legal principles. * * * if it be held that the court may not authoritatively decide all questions of law arising in criminal cases—the result will be that when a new trial in a criminal case is ordered, even by this court, the jury, upon such trial, may of right return a verdict based upon the assumption that what this court has adjudged to be the law is not law. We cannot

give our sanction to any rule that will lead to such a result. We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be. Under any other system, the courts, although established in order to declare the law, would for every practical purpose be eliminated from our system of government as instrumentalities devised for the protection equally of society and of individuals in their essential rights. When that occurs our government will cease to be a government of laws, and become a government of men. Liberty regulated by law is the underlying principle of our institutions."

To support his contention that the court erred in refusing to give the first and in giving the second instruction, the plaintiff in error relies upon *Schnier* v. *People,* 23 Ill. 17; *Fisher* v. *People,* 23 id. 283; *People* v. *Mirabella,* 294 id. 246; *People* v. *Stephens,* 297 id. 91, and *People* v. *Pilewski,* 295 id. 58, in each of which it was held that the jury had the right under the statute in question to disregard the court's instructions; upon *Mullinix* v. *People,* 76 Ill. 211; *Davison* v. *People,* 90 id. 221, and *People* v. *Campbell,* 234 id. 391, which recognized the rule that it was proper to tell the jury that they were bound to act on the law as laid down by the court unless they could say on their oaths that they were better judges of the law than the court; upon *People* v. *Kuchta,* 296 Ill. 180, and *People* v. *Maruda,* 314 id. 536, in which it was held that the jury might be instructed that they were the judges of the law as well as the facts in a criminal case, provided they upon their oaths considered that they knew the law; upon *People* v. *Zurek,* 277 Ill. 621, and *People* v. *Karpovich,* 288 id. 268, in which it was decided that, because of the statute under review, a

motion to direct a verdict for the defendant in a criminal case should not be entertained, and upon *Wohlford* v. *People,* 148 Ill. 296, in which it was held that the law, as laid down by standard authors and as contained in the reported cases of courts of last resort might be read to the jury by either party, including the statements of fact upon which the decisions were based. In none of these cases was the validity of section 11 of division 13 of the Criminal Code questioned and in no case has the statute ever been attacked upon the grounds urged in the case at bar. The contention was made in *People* v. *Moretti,* 330 Ill. 422, that the statute violated sections 13 and 17 of article 6 of the constitution which provide respectively that, "one judge shall be elected for each of said circuits by the electors thereof," and that "No person shall be eligible to the office of judge of the circuit or any inferior court * * * unless he shall be at least twenty-five years of age." The court failed to find in these sections of the constitution any limitation upon the power of the legislature to enact the particular statute, but added that if there were valid constitutional objections to the statute, the plaintiffs in error had failed to point them out. To sustain the constitutionality of a statute against a particular contention is not decisive of its validity against subsequent attacks upon different constitutional grounds. In *Manaster* v. *Kioebge,* 257 Ill. 431, section 128 of the Practice act was sustained against the charge that it violated the provisions of the constitution respecting the title of an act. Later, in *Sturges & Burn Manufacturing Co.* v. *Pastel,* 301 Ill. 253, the grounds of attack upon the same section were that it contravened the constitutional provisions relating to due process of law and the equal protection of the laws, and the section was declared void. A decision upholding the validity of a statute does not preclude the same court from subsequently declaring it unconstitutional in another case in which the statute is assailed upon grounds other than those urged in the former case. (*Davison* v. *Chicago*

*and Northwestern Railway Co.* 100 Neb. 462, 160 N. W. 877, L. R. A. 1917C, 135; *State ex rel. Curtis* v. *Ross,* 144 La. 898, 81 So. 386; *Adams* v. *Yazoo & M. V. Railroad Co.* 77 Miss. 194, 24 So. 200, 60 L. R. A. 33; *Shoemaker* v. *City of Cincinnati,* 68 Ohio St. 603, 68 N. E. 1). Other cases to the same effect are, *Pollock* v. *Farmers' Loan and Trust Co.* 157 U. S. 429; *Allardt* v. *People,* 197 Ill. 501; *People* v. *Thompson,* 283 id. 87; *Prall* v. *Burckhartt,* 299 id. 19, and *Virtue* v. *Board of Free Holders of Essex Co.* 67 N. J. L. 139.

The fact that the statute in question has been construed and applied during a considerable period of time does not necessarily render it immune from constitutional attack. In *Neiberger* v. *McCullough,* 253 Ill. 312, Mr. Justice Cartwright, in delivering the opinion of the court, said: "It is true that where a constitutional provision is doubtful and there is need of interpretation, the practical exposition of it by departments of government called upon to act under it, acquiesced in by the people, especially for a considerable period of time, raises a strong presumption that it is correct and will generally be adopted by the courts. (*Nye* v. *Foreman,* 215 Ill. 285; *People* v. *Olson,* 245 id. 288; *Cook County* v. *Healy,* 222 id. 310). Where, however, the language of the constitution is not ambiguous it is not permissible to interpret it differently from its plain meaning, and a construction contrary to its terms, for any period of time, will be disregarded."

Section 11 of article 13 of the Criminal Code not only deprives a jury trial at common law of one of its essential attributes, but it also violates article 3 of the constitution and is void. The cases which have heretofore interpreted and applied the statute, to the extent that they conflict with this opinion, are therefore overruled.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*

Mr. Justice Duncan, dissenting:

Section 176 of the revised and private laws of Illinois of 1827, pages 162, 163, is in the following language: "All trials for criminal offenses, shall be conducted according to the course of the common law, except where this act points out a different mode; and the rules of evidence of the common law shall also, unless changed by this act, be binding upon all courts and juries in criminal cases. Juries shall in all cases be judges of the law and the fact." The last provision of said section that juries shall in all cases be judges of the law and the fact has been several times re-enacted and declared by the legislature of Illinois, as recognized by the decision of the court in this case, and it has been the recognized law of Illinois for more than one hundred and three years. There is no other decision by this court in which it has been held that the legislature of this State did not have the right and power to enact that provision. Wherever that right and power have been referred to or discussed in the previous decisions of this court it has never been held or intimated that the legislature was without right or power to enact that provision. There has never been a constitutional provision in this State that denied or challenged the right and power of the legislature to enact said provision of the statute of 1827. Section 6 of article 8 of the constitution of 1818 simply provided "that the right of the trial by jury shall remain inviolate." Section 6 of article 13 of the constitution of 1848 provided "that the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy." Section 8 of article 8 of the constitution of 1818 and of article 13 of the constitution of 1848 provide "that no freeman shall be imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Section 11 of article 8 of the constitution of 1818 and of

article 13 of the constitution of 1848 provide: "No person shall, for the same offense, be twice put in jeopardy of his life or limb." Section 5 of article 2 of the constitution of 1870 provides: "The right of trial by jury as heretofore enjoyed, shall remain inviolate; but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law." Section 10 of article 2 of that constitution provides: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

In the case of *Ross* v. *Irving*, 14 Ill. 171, decided in December, 1852, this court held that the statute of this State commonly called the Occupying Claimants' law was constitutional, and that the mode of assessing the value of improvements under that law by seven commissioners, as provided by that statute, did not infringe upon that clause of the constitution which guaranteed the right of trial by jury. It was further held in that case that the guaranty in the constitutions of 1818 and 1848 that the "right of trial by jury shall remain inviolate" was to be construed as preserving the right of that mode of trial as it was understood to exist at the time of the adoption of those constitutions; that trial by jury is only required on issues of fact in civil and criminal cases in courts of justice, and cannot be extended so as to embrace the case of a mere assessment of damages or the valuation of property made out of court, though done under an order of court directing the assessment of valuation. The court in arriving at its decision referred to the fact that at the time of the adoption of the constitution of 1848 said act, which it held valid, was of near forty years' standing, had been "repeatedly re-enacted by different legislatures, and had been recognized as valid by the Supreme Court in directing proceedings under it," and that the constitution of 1848 did not in any provision thereof declare the act invalid. It seems to me that the above case is one of the strongest of all of our Illinois

cases on the proposition that this court has no right to say that the provision of the statute that juries in criminal cases shall be judges of the law and fact is invalid, as being in violation of section 5 of the bill of rights in the constitution of 1870. It is cited by the judges who delivered the opinions of this court in the following cases, in all of which it was held that the right of trial by jury as guaranteed by the constitution of 1870 is the right as it existed at the time of the adoption of that instrument, to-wit: By Judge Scholfield in *Commercial Ins. Co.* v. *Scammon*, 123 Ill. 601; by Judge Cartwright in *Borg* v. *Chicago, Rock Island and Pacific Railway Co.* 162 Ill. 348; by Judge Cartwright in *City of Spring Valley* v. *Spring Valley Coal Co.* 173 Ill. 497, in which case he said: "The right of trial by jury which is preserved by the constitution is the right as it had been enjoyed before the adoption of that instrument. * * * The question whether a statute infringes the constitutional provision that the right to trial by jury as theretofore enjoyed shall remain inviolate raises a purely historical question, and nothing else. It is not to be determined by a consideration of what the legislature ought to do in providing for the submission of issues to a jury but such arguments are to be addressed to the legislature." In *Brewster* v. *People*, 183 Ill. 143, Judge Magruder passed on the right of a defendant in a criminal case to waive trial by jury, and in that case held that the right of trial by jury as guaranteed by the constitution of 1870 is the right as it existed at the time of the adoption of that instrument, and cited *Ross* v. *Irving, supra.* In *Paulsen* v. *People,* 195 Ill. 507, Judge Boggs cited *Brewster* v. *People, supra,* and held that the right of trial by jury as guaranteed by the constitution is the right as it existed at the time of the adoption of that instrument. In *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, a decision by Judge Farmer; in *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609, a decision by Judge Dunn; and in *Liska* v. *Chicago Railways Co.*

318 Ill. 570, a decision by Judge DeYoung, it was said in all three of those cases that the right of trial by jury guaranteed by the constitution is the right as it existed at common law and as it was enjoyed at the time of the adoption of the constitution. In the *Sinopoli case* there is quite a lengthy discussion of the subject, and it was there said: "The Ordinance of 1787 provided by article 2 of section 14 that the inhabitants of the Northwest Territory should always be entitled to the benefits of the trial by jury. The act of Congress of May 7, 1800, which divided that Territory and constituted of its western portion the Indiana Territory, provided that the inhabitants of the latter Territory should be entitled to and enjoy all and singular the rights, privileges and advantages granted and secured to the people by the Ordinance of 1787. The act of Congress of February 3, 1809, dividing the Indiana Territory and constituting Illinois of its western portion, provided that the inhabitants of Illinois should be entitled to and enjoy all the rights, privileges and advantages granted to the people by the Ordinance of 1787. When the constitution of 1818 was adopted the right of jury trial was recognized as existing and it was declared that it should remain inviolate. This referred to the right of trial by jury as it existed at the time that constitution was adopted in the Territory of Illinois and had previously existed in the State of Virginia and as it was guaranteed by the Ordinance of 1787 and the. acts of Congress constituting the Territories of Indiana and Illinois. This right was inviolate under the constitution of 1818, and the right to which the constitution of 1848 refers is the same right and was equally inviolate under that constitution. At the time of the adoption of the constitution of 1870 the right as it had been theretofore enjoyed was the same as existed at the adoption of the constitution of 1848 and of the first constitution, in 1818."

When the adoption of section 5 of article 2 of the constitution of 1870 was the question before the constitutional

convention it was moved by one of the members, Mr. Ross, to strike out the words "as heretofore enjoyed," on the ground that "it might become a question of importance if the legislature should desire to make any change in the law with reference to trial by jury whether the constitution would not enforce the exact course of procedure now provided for by law in our State." The motion was opposed by Mr. Allen, of Alexander county, who said: "The right of trial by jury as heretofore enjoyed is a right well understood. It is a constitutional right that we provide shall remain inviolate * * *. We know how this right has been enjoyed and we need have no fear of the future." The motion to amend was not adopted. (Debates and Proceedings of Constitutional Convention of 1870, p. 1568.) This discussion shows that the convention, if it did not by section 5 of article 2 intend to engraft upon the constitution the statutory provisions relating to trial by jury, did have in mind at the time it adopted that section the statutory law on the subject of jury trial and that it did not intend by adopting section 5 to make a provision that would operate to destroy the statute then in force upon that subject. The statutory provision that the jury in a criminal case should be the judges of the law and the fact had been in force and recognized as valid in this State for over forty-two years at the time the constitution of 1870 was drafted and adopted. The members of the constitutional convention knew of that law, and it cannot, it seems to me, be said with any reason that they intended that the adoption of section 5 of article 2 should operate to destroy that statute, as substantially held by this court in its decision of this case.

The provision of the constitutions of 1818 and 1848 that no person should for the same offense be twice put in jeopardy was adopted as part of the constitution of 1870 by section 10 of article 2 of that instrument. This provision of the three constitutions shows that it has always been the constitutional law of this State that the jury in a crimi-

nal case by returning a verdict of not guilty settles the law as well as the fact in favor of the accused so far as the particular case in which such verdict is returned is concerned. Such verdict does not, of course, settle or establish the law to be applied to any other case. It has never been held by any court of this country that upon a verdict of guilty in a criminal case the trial judge did not have the right and power to grant a new trial if there were errors of law committed in the trial or if the evidence did not support the verdict. The decisions of this court have been uniformly to the effect that the law in this State is that the trial judge should instruct the jury as to the law and that the jury should accept the law as given to them by the judge in his instructions unless they could say upon their oaths that the judge was wrong in his exposition of the law, and that a verdict of guilty could be set aside and a new trial granted by either the trial judge or the Supreme Court where errors prejudicial to the accused were committed on the trial or where the verdict is not supported by the evidence. Any argument that the provision of the statute that juries shall in criminal cases be the judges of the law and the fact operates to deprive an innocent person accused of crime of any of the safeguards that ought to surround him is utterly without any foundation and manifestly unsound.

The history of the right of trial by jury in criminal cases is discussed at length in the very learned dissenting opinion of Mr. Justice Gray, in which Mr. Justice Shiras concurred, in the case of *Sparf* v. *United States*, 156 U. S. 51 and 715, 15 Sup. Ct. 273. It is there pointed out that by the provision of Magna Charta no person could be taken or imprisoned, or deprived of his freehold or of his liberties or free customs, unless by the lawful judgment of his peers or the law of the land; that by the law of England at the time of the settlement of this country by Englishmen, every subject (not a member of the House of Lords)

indicted for treason, murder or other felony had the right to plead the general issue of not guilty and thereupon be tried by a jury, and if the jury acquitted him the verdict of acquittal was conclusive in his favor of both the law and fact involved in the issue; that the jury in any case, criminal or civil, might, by finding a special verdict reciting the facts, refer a pure question of law to the court, but they were not bound and could not be compelled to do so even in a civil action. That opinion also points out that it became the settled law of England, following *The Trial of the Three Quakers,* in 1665, by the decision of all the judges of England (one only dissenting) that there could be no attaint of jurors for their verdict rendered in a criminal case. It also points out that from about the date 1680 there was a lack of uniformity in the practice in the courts of England, in the trials of criminal libel, in the instruction of juries, some judges holding and instructing the juries that they were the judges of the law and the fact and other judges instructing the juries that they were bound by the judge's decision of the law; that in *The Trial of the Seven Bishops,* 12 How. St. Tr. 183, in the last year of the reign of James II, the judges submitted to the jury for their decision the question of law as well as of the fact and the jury returned a verdict of not guilty; that Mr. Murray (afterwards Lord Mansfield) became the leading exponent of the theory that juries were the judges of the fact, only, and Mr. Pratt (afterward Lord Camden) of the theory that juries were the judges of the law as well as of the fact and could not be compelled to render a special verdict; that this controversy was finally settled in favor of the view of Lord Camden by an act of Parliament known as Fox's Libel act, which was passed in 1792; that after the passage of this act, in the well-known case of *Rex* v. *Burdett,* 3 Barn. & Ald. 717, 4 id. 95, and 1 State Tr. (n. s.) 1, which was a trial for publishing a seditious libel, the jury were instructed that it was the opinion of the court that

the publication was a libel and that they were to decide whether they would adopt his opinion, and that they should do so unless they were satisfied that he was wrong; that this instruction was held to be correct on a motion for a new trial, Mr. Justice Best saying: "The legislature has said * * * that the whole cause is to be left to the jury. But judges are in express terms directed to lay down the law as in other cases. In all cases the jury may find a general verdict. They do so in cases of murder and treason, but there the judge tells them what is the law, though they may find against him unless they are satisfied with his opinion." The opinion also refers to the early decisions of the courts of this country, and points out that within six years after the adoption of the constitution of the United States the right of the jury, upon the general issue, to determine the law as well as the fact in controversy was affirmed in the first of the very few trials by jury had at the bar of the Supreme Court of the United States; (*State* v. *Brailsford,* 3 Dall. 1;) that in the trial of Aaron Burr for treason, in the circuit court of the United States for Virginia, Chief Justice Marshall in his charge to the jury recognized the right of the jury to decide questions of law as well as of fact. The opinion then states: "Until nearly forty years after the adoption of the constitution of the United States not a single decision of the highest court of any State, or of any judge of a court of the United States, has been found denying the right of the jury, upon the general issue in a criminal case, to decide according to their own judgment and consciences the law involved in that issue, except the two or three cases above mentioned concerning the constitutionality of a statute."

As shown above by reference to the opinion of Mr. Justice Gray in the *Sparf case, supra,* it was not the settled law of England, nor was it the law in this country at the time the Ordinance of 1787 was enacted, that juries in criminal cases were judges of the fact, only. There seems

to be more reason to say that according to the common law at that time the jury in a criminal case were the judges of both the law and the fact involved in a plea of the general issue. The cases that hold that a jury should not pass upon the validity or constitutionality of a statute in a criminal case are not opposed to this view of the law. It has never been held by this court in this State that juries had the right to pass upon the validity or constitutionality of the statute in criminal cases. The jury in such a case have never been conceded the right by this court to pass on the competency of witnesses or the admissibility of evidence in this State. The power of courts in this country to declare acts of the legislative department of government void as being in violation of the constitution is a power the courts of England never had and that did not exist under the common law of that country. It is significant to note that it was not until forty years after the adoption of the constitution of the United States and of the Ordinance of 1787 that there was any opinion of any court in this country that affirmed the doctrine that a jury in a criminal case were not the judges of the law and the fact involved in a plea of the general issue, and that it was in 1827,—that is, forty years after the adoption of the constitution of the United States,—that the legislature of Illinois enacted the statute that declared that the jury should be the judges of the law and the fact. In making that enactment the legislature did not take away nor detract from the right of trial by jury as it was understood to exist in this country at the time the Ordinance of 1787 was enacted and at the time the constitution of 1818 was adopted, but merely made an express provision of law on the subject which was in accord with the decisions of the courts of this country at that time. The right of trial by jury as guaranteed by the constitution of 1870 is the same right as was guaranteed under the constitutions of 1848 and 1818 and the Ordinance of 1787, and such has been the holding of this court in the cases above

cited. The fact to which reference is made by this court in this case that a majority of the States in this country, and the Federal courts, have refused to follow the decisions of the courts of this country, State and Federal, decided prior to 1827, has no important bearing on the question of what the decision of the court should be in this case, and the citing by this court of so many decisions upon this question, State and Federal, holding contrary to the decisions of this State, as it seems to me, is lost energy.

The conclusion that the legislature had, or has, no power to say by law that juries in criminal cases shall be the judges of the law and the fact because of the provision of article 3 of the constitution of 1870, which declares that the powers of government shall be divided into three distinct departments, the legislative, executive and judicial, seems to me not tenable. The provisions of article 3 of the constitution of 1870 were contained in substantially the same language in the constitution of 1818 and the constitution of 1848. If the statute declared by the court to be unconstitutional is in violation of article 3 of the constitution of 1870 it was also unconstitutional under the provisions of the constitutions of 1818 and 1848 declaring that the powers of government should be divided into three distinct departments. It has always been recognized that the legislature in this State has the power to pass laws concerning the mode of practice and procedure in the courts. The practice in the trial of common law cases is regulated by the Practice act, the practice in chancery cases is regulated by the Chancery act, and the mode of practice and procedure in criminal cases is regulated by the Criminal Code. Section 29 of article 6 of the constitution of 1870 provides: . "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be

uniform." It seems to me that this is a clear recognition of the power of the General Assembly to pass laws relating to the practice and procedure of courts. This court has held that the legislature has the constitutional power to prescribe rules of evidence (*Burbank* v. *People*, 90 Ill. 554,) and to prescribe that a fact shall be *prima facie* evidence of a certain other fact if it has a tendency to prove such other fact. (*Morrison* v. *Flowers*, 308 Ill. 189; *People* v. *Beck*, 305 id. 593.) In *Michaelson* v. *United States*, 266 U. S. 42, 45 Sup. Ct. 18, the Supreme Court of the United States stated that while the legislative department of government has no power to pass an act that would abrogate or render practically inoperative the attributes that inhere in the judicial power vested in the courts it does have the power to regulate the exercise of the judicial function within limits not precisely defined, and it was decided in that case that an act of Congress providing that there should be a jury trial in certain specified cases of contempt of court was not invalid as being in conflict with the provision of the constitution of the United States providing for the separation of the powers of government into three distinct departments.

If it be admitted to be the fact (I deny that it is the fact) that the statute of 1827 which provided that the jury in a criminal case should be the judges of the law and the fact did make a change in the law as it had theretofore existed, it does not follow that the statute is unconstitutional. It should be noted that the jury, when sitting as a part of the court in the trial of a criminal case, are as much a part of the court as is the presiding judge, and the fact that the jury are vested with the power to decide the question of law as well as of fact involved in the plea of the general issue in a criminal case does not vest judicial power in a non-judicial body.

Where an act of the legislature has been recognized, sanctioned and acquiesced in by the different departments

of the government and the people for many years, such practical construction ought to have great weight with the court in determining the constitutionality of the act and raises a strong presumption that it is correct. (*People* v. *Olson,* 245 Ill. 288; *Cook County* v. *Healy,* 222 id. 310; *Nye* v. *Foreman,* 215 id. 285; *People* v. *Knopf,* 171 id. 191; *People* v. *Morgan,* 90 id. 558.) The instruction quoted in the opinion of the court in this case which was requested by the plaintiff in error and refused by the court states the law in accordance with the decisions of this court. on the subject from the time of the organization of the State. The last two sentences of the instruction given by the court at the request of the People state that "the court is the sole judge of the law in the case, and it becomes the duty of the jury to follow the law as it is given to it by the court in his instructions," and that "you have no right to disregard it, or disregard any portion thereof, but you are bound to take the whole of it as it is given to you by the court and apply it to this case." I hold that it was error in the court to refuse to give the instruction offered by the plaintiff in error. I also hold that it was error in the court to instruct the jury as it did in the last two sentences of the instruction given by the court on the part of the People; that it overrules all the decisions of this court on that subject since its organization; that the legislature of this State had the' right and power to pass the statute in question and it also has the right and power to repeal it, and that said rights and powers of the legislature are recognized by all three of the constitutions of our State. I further hold that the declaring of that statute void by this court is an usurpation of the right and power of the legislature.

For the foregoing reasons I respectfully dissent from the opinion of the court in this case.